Good morning, Your Honors. Counsel, may it please the Court, my first comment may be inappropriate, but since I was invited 20 years ago to Justice Schmitz swearing in, I want to express my condolences to this Court, especially you, Justice O'Brien. I have three issues to raise and argue briefly. The first one is different than two and three. The first one deals with, yes, the two to Mr. Reader before he died. Referring to my reply brief, pages eight and nine. It is a mootness question. All 27 residual charitable legacies receive notice of the final report of May 19, 2016. I know they received it because they got 26 of 27 receipts back of personnel and approving the closing of the estate and approving the fees. The 27th was prompted by that same notice and an objection was filed by the National Multiple Sclerosis Society on June 29th, 2016. And my point of the final report is that it occurs within two years of Mr. Reader's death on July 21st, 2014. So we have a May 19th, 2016 final report. Mr. Reader died July 21st, 2014. So it's within the two years that is at issue with the reference to Section 28-8 of the Probate Act. A further point is the $3 million that the 27 charities received, Mr. Reader had carved out 1 percent, all the way up to 7 percent, $30,000 and $210,000 approximately, were also distributed one day before his death, two years after his death. On the two-year anniversary of his death, on July 20th, 2016. The point of the mootness is the other 26 charities received the same notice that the Multiple Sclerosis Society received. And they filed their objection. And understandably, Counsel for Multiple Sclerosis has been riding the coattails. I have no complaint with that. I'm having trouble understanding how your argument rises to the level of equivalency. How a claim, in the filing of a claim, is the same as filing an accounting and getting notes. Because there's more than just notice required in the claim filing, isn't there? I mean, procedurally, they're two different things. I looked at it in the reverse, Your Honor, Justice Doherty. I looked at it as, it raised the issues of fees. My fee petition noted the final report. And, if you'll allow me, the fees raised those issues, the notice brought out one of the 27 charities. That set the stage for a bench trial in front of Judge Gorman, the first appeal to this court. The post-trial motions were extensive. Right, but I mean, there's a distinction in a claim proceeding in that the procedure permits for a special representative to be appointed to represent the state, and you can get a jury trial in a claim. It said may, and these have been questions of law presented here for. Right. I understand the question of notice. But, I mean, procedurally, there are two different answers. I still believe, because everything we experienced and proceeded through in these proceedings, two appeals, a bench trial, and voluminous motions and briefs, that the Subject 2 reference has been satisfied. The 18-8 reference, I can't convince you otherwise. All I can say is that it is swamped by what has happened by the objection and the entry of the Attorney General to pursue what, frankly, at least one of those 26 waived thoroughly. What my other two points deal with is, Justice, the opinion we're dealing with, Justice Holdridge pointed out in paragraph 45 of his opinion, he was focused with those questions on the services provided to Ron Reeder while he was alive. He uses the phrase in paragraph 45. I want to know if he was performing those tasks in a different capacity, such as power of attorney. That's question one. Second one is, I want to know, let me backtrack. Justice Holdridge, I believe, asked that question because he was concerned with the wording of the statute, 28-8. He says, describes them as independent representatives or his attorney shall pursue 18-8 for a formal claim. I think Justice Holdridge was directing when he said specifically these two questions that he was making a distinction between pre-death services and post-death services. And that is one distinction. The independent representative's attorney is not referencing pre-death services. It is referencing post-death services of the executor. And I'm saying by the statute's plain wording and using those two phrases, it's not intended for tasks under a different capacity, which Justice Holdridge asked about. He wanted to know, is there a distinction there? So you're saying that if an independent representative has a claim, let's say it's a promissory note or something like that, they don't have to, they're not included under the language of the statute because you're not making a claim as independent representative? The claims are different. The power of attorney is the basis for those services. It's a claim for the services. Still, it has the language in the power of attorney saying he can pay himself for, direct your specific attention to it since I drawed it. The power of attorney is at Appendix A-7. At the bottom of A-7, you'll see language to arrange and pay the costs of the services of a companion for me, medical, nursing, hospital, convalescent, any other health care and treatment. Top of page A-8, similar ability language to pay and A-8 at the second and third full paragraphs. So that's different than I owe you for repairs on my car. The POA was empowered with specific language to pay himself. The POA was. The POA was no longer in existence when you paid yourself for the mistake. He still was empowered to pay it and makes that quite different claim. Now, when we get to my third point is 28-8 clearly relies on the powers and the will. Okay? And it excludes any language, especially 28-8E referring to 18-8. Ignore that language if the will, if it's inconsistent with the will. The will answers the question. List of powers in the third paragraph, I give my executor the following powers and discretions in each case to be exercisable without court order. In each case. Means no exceptions. IA, independent administration, would fall on its face if we started making exceptions to language adopting IA, which Mr. Reeder did, and the additional powers the testator gave. I was his family and his attorney for more than 25 years. And both we know that interpreting the will and the statute is a question of law. Both here are in sync. First sentence of 28-A says the powers granted in the will, prioritized. They're prioritized. You look at the will. It says I give Mr. Gassick the following powers, which included a sentence that says pay my claims either for or against the estate. Makes no exception. If we start making exceptions and splitting hairs like that, I think we destroy independent administration. So in each case, to be exercisable without court order, which is exactly what I, independent administration, is the flip side of. We're creating a system that is more efficient, relying on the testator. As 28-A relies on the testator when it says the powers granted in the will should basically be prioritized. So I'm arguing that we don't even reach, when we look at 28-A-8's first sentence, powers in the will, and exclude anything inconsistent with the will, 18-8, and you look at the will and make the same determination this court did in the first appeal, and that is our reading of the will indicates that the plain and ordinary meaning of the words used clearly require. That's what this court said about the same paragraph referring to the attorney fees and the executive's fees, what was the standard for the payment of those. We're looking at the plain and ordinary meaning. We're really looking at the will. The statute says look at the will. Ignore anything inconsistent with the will. Both give intentions to the testator. We all know that has been case law forever. The primary intent is to give intention of the testator priority if it is plain and ordinary language. This is. In answer to Justice Holdridge's and this court's second question, the first was, are those tasks by a POA, he may have been drawing a distinction between the statute's use of the word independent representative or his attorney, or clearly when he applies the same language this court did in interpreting the other language in that section of the will, plain and ordinary meaning of the words used, that answers the question. When Justice Holdridge answered, can he pay it without filing a claim? We're relying on Mr. Reader's own words both in the power of attorney to give him those powers and in the will to pay any claims. No exceptions. It says in each case, if we start splitting hairs in independent administration that way, then there's a practical reason or pragmatic reason, Justice Hagerty, and that is Doherty. Apologize. Justice Doherty, once Wells Fargo learned of the death, which I gave immediately, Mr. Hammer said, don't do anything. Don't write any checks. Don't do nothing. We're converting everything in their system from lifetime accounts, which are three of them, to a jumbo estate account. So it really did. The ability to pay it died roughly immediately after his death because of the notice to Wells Fargo. The whole point that I'm relying on, just as I relied on the question of law as the plain and ordinary meaning of the testator's language in paragraph 45 of the first opinion here, I'm again relying on the plain and ordinary meaning of the statute. Prioritizes the will. Ignore inconsistencies. Look at the will. Pay claims. In each case, you have these powers, exercisable without court order, mimicking the very intent of an independent administration. Pay them without court order. Clearly, that's the intent of the testator, just like it was when this court interpreted his formula for fee payment. In two wills. And this language was also in his first will eight years before the one that was probated. And he did that just to add another charity. I have nothing further to add. My time is up. And I have a few seconds in reply. But it is all boils down to Mr. Reeder's intent, both other than the mootness question, Mr. Reeder's intent. And by statute, it's honored. And in his will, this court's honored it already. I have one question. Please step down, sir. Is your interpretation, and this would be my understanding, that the language in the will would essentially preclude any interested person in the estate from challenging the payment of a claim? I have that broad in your view? There are ways for them to object to the final report, and that's exactly what happened here. Everybody has that. But if you've got the authority under the will to settle and compromise, and you're asking us to endorse that, doesn't that preclude anybody from even offering a challenge? How does it work otherwise in an independent administration? Bills and statements are paid. Nobody gets notice of those. They have to bring a proceeding against the estate on their own. Okay. They're excluded. And here, it's ‑‑ you know, if you bear with me, and I'll even give up some of my time on the reply. You can issue a reply, but that will be fine, sir. I understand you. Okay. Thank you. Thank you. Mr. Siegel. Good morning, Your Honors Counsel. May it please the Court, I'm Assistant Attorney General Evan Siegel on behalf of the people of the State of Illinois. The circuit court correctly concluded that the executive was not entitled to pay himself some $51,000. And these were fees that he paid to himself for services, save for around $218 attributed to the purchase of a dehumidifier that he performed before the death of Ronald Reader. But the nature of those services are unknown. They have never been identified or explained, except generically as things that the executor did as power of attorney. And the executor did not pay himself. It's important to note, during Reader's lifetime, when Reader could have seen those charges and been aware of them, yet Reader's will does not authorize this $51,000 self‑payment because the language of the will, as the circuit court correctly concluded, neither specifically nor directly, shows that this was Reader's intent. There's no conceivable basis for us to assume that Reader, making this will in 1997, intended for the executor to write himself checks 17 years later in the amounts of $29,000 and $21,000, respectively, for unspecified and unknown reasons. And there's indeed nothing in Reader's will that gave the executor the authority to ignore the act. Instead, any payment by the executor to the executor needed to be presented to, as a claim, to the circuit court under section 18.8 of the act, as the circuit court correctly concluded, and as you observed a moment ago, Justice Dougherty. Those provisions exist to prevent conflicts of interest like the one that we have here, where an executor is also a claimant for payment from an estate for substantial sums. We are not talking about de minimis funds that, for instance, would represent somebody with the power of attorney driving the person in their care to the doctor for medical appointments or filling up the car for gas. And if we didn't have this conflict of interest provision, how would an executor fulfill his fiduciary duties? Understanding the need to protect the states from self‑dealing, the General Assembly enacted section 18.8 of the act. An executor cannot just pay himself for whatever he wants, whenever. There may be legitimate purposes in certain situations, but there is documentation that must exist and procedures that must be followed. And so the General Assembly decided to prohibit self‑payments of this sort, unless judicial oversight from the probate court could be invoked to decide the propriety of such payments. Contrary to the executor's interpretation of events, readers will not repeal those provisions designed to ensure that estate administrators like him conduct themselves in good faith, not unjustly enrich themselves, protect beneficiaries, and carry out their fiduciary duties. And the General Assembly's solution, which the executor ignored, was quite easy. File a claim with the probate court, notifying the court of the potential conflict of interest so that the court can appoint a special representative to be sure. There was nothing time‑consuming or onerous about the executor taking this step, at least none that he has disclosed. It would have been beneficial to the estate and the charities if the executor had done so, rather than his performing so many unnecessary duties and tasks and duplicative functions. Indeed, the circuit court already has ordered the executor to refund in excess of $21,000 to the estate, and this court has affirmed the repayment of $4,400 of that total amount in its earlier decision in Reader 1. And now in this appeal, in this round, the executor has conceded that he is not contesting that he overbilled the estate for some $17,000. As the circuit court aptly noted, this executor had both knowledge and experience, yet decided, quoting the circuit court, for whatever reason to take a calculated risk in not filing a claim for independent administration under Section 18‑8. Well, it may turn out that he miscalculated. And one cost of the risk is continued litigation over this issue and other related ones now going on eight years. This case began in September of 2014. Briefly, I want to address two of the arguments that we just heard from the executor. First, he is incorrect that Section 18‑8 of the Act, a particular language of the Act, just disappears by virtue of what is contained in the will. And it is difficult to discern exactly what he is arguing, and it is not articulated quite very clearly in his brief. But I think what we just heard was that he didn't have to file a claim because he acted as a power of attorney, and Section 18‑8 does not refer to a power of attorney. But that's not surprising because the power of attorney, because the Act involves situations after the death of a decedent, and a power of attorney ceases to exist upon that death. In any event, the theory of justifying self‑payment, in attempting to justify that theory, the executor is cherry‑picking the language of the Act. The Act, yes, refers to a representative or the representative attorney if he has a claim. But the next sentence says that the representative, as a person, must file a claim with the court in his capacity as other persons, meaning as a claimant, including a claimant who had power of attorney. It does not follow, as the executor implies, that because Section 18‑8 omits reference to power of attorney, that no claims must be filed. Section 18‑8 refers to a person, and the executor may have ceased being a power of attorney, but he is still a person under Section 18‑8. The executor's second main argument fares no better, and you made this point yourself, Justice Dougherty. He asserts that mailing the claim to the beneficiaries, mailing his report about the claim to the beneficiaries, satisfied filing a claim with the probate court. They are two completely different requirements, and one does not obviate the other. None of the charitable beneficiaries received even a mention of the $51,000 self‑payment. That sum is mentioned nowhere in the final report contained at pages 8 and 12 of the appendix. So in sum, if a statutory requirement like Section 18‑8 could simply be overridden by generic language based on boilerplate provided by a bar association, then the provision would become meaningless. There would be no conceivable instance where an executor could not pay whatever claim he wanted to pay to himself without any neutral, objective court supervision, ensuring that beneficiaries are protected. And this court should not endorse or create the rule that the executor advocates to allow self‑interested executors to self‑deal and to avoid filing claims and to avoid court oversight. But you seem to think that, you know, without the filing of a claim, there's no way for anyone to ever ask to see exactly what was paid, what services were incurred. But isn't the fact that we're actually hearing it being put in this final report sort of, you know, dispels that idea that, you know, notice was received and disputes were had and maybe they weren't done in front of him, but they were done in this, you know, final report. And it appears that, you know, the testator wanted to give a tremendous amount of discretion pre‑death and post‑death because the power of attorney, you mentioned earlier, that, you know, none of these things that he did would have, he would have been able to do without Mr. Reeder seeing them during the lifetime. But that's not what the power of attorney says. He could sign those checks. He could pass them. He could keep them. You know, if he wanted to, you know, there was a tremendous amount of discretion in that power of attorney. And then, again, as, you know, in the will. And so, you know, it seems a little like maybe form over substance, although, you know, I understand, you know, the nature and the reason behind 18‑8, but there has been an exposure here. So why is it that not? So I have three responses, Your Honor. The first is that the power of attorney power that you just mentioned, of course, enabled the power of attorney to perform certain functions pre‑death. The power of attorney language does not allow the executor to pay himself for unknown services without the need to file the 18‑8 and have that court oversight. Secondly, we are here today, but think of how difficult and long this journey has been. This case has been up twice before this court. It's been before the circuit court twice, once on remand. And all of this could have easily been avoided had somebody with the executor's knowledge and experience filed the claim in the first place. And my third point is just to underscore what the circuit court held with respect to the two questions that this court posed on remand in Section 45. The court held that in this case, Mr. Reeder's will was not sufficiently specific, factually, about what types of claims could be paid without court oversight. And secondly, the will did not mention, acknowledge, or refer to Section 18‑8 or Section 28E. The implication from that is that there could be conceivably some cases where a testator makes a sufficient disclaimer from the language of the act to authorize what happened here. But this was not the case with Mr. Reeder's will. For all these reasons, this court should uphold the circuit court's decision about the $51,000. The Attorney General stands on Section 3 of our brief, considering the $600 error. And as noted earlier, the executor is not contesting the need to repay approximately $17,000 to the estate and the beneficiaries. And if the court has no further questions, we ask you to affirm the judgment of the circuit court. Thank you. First, you heard counsel talk about the vagueness of those two billing statements. You did that in the ‑‑ that was also done in the Zoom hearing and the first appeal, and I responded, that's disingenuous. And the reason I did is because those two POA billing statements and the target expense receipt for a humidifier, all in direct reference to interveners exhibits F3, F4, and F5, were trial exhibit 12. So those statements are there. He made it sound like there's something in the ether that isn't the case. As far as ‑‑ and the last entry of that POA billing statement, too, is the day, the six hours, eight hours before Mr. Reeder died, that I spent with him in the ER because he's a high‑functioning autistic person enveloped with dementia, and that was no place for him to be surrounded alone by machines and people he didn't know. So he died the next day. My powers of attorney ended at 1 o'clock that following morning. You can always add language, and on page 8 of my reply brief, please read the logic to that criticism. The quote I made, I'll paraphrase, is, the legislature is the superior role of creating law. But it does say, if it's plain and ordinary in its meaning, varying opinions by layman, lawyers, judges, demands of the interest of the public, public policies, states or district department must remain silent if a modification or change to this policy is desired by lawmaking. The point is, we have independent administration to set out these rules if we now start opening the door to, but it didn't say this, but it didn't say this. This court had no problem with the attorney fee provision in saying, we've read it and it clearly requires this. It's the plain and ordinary meaning. The plain and ordinary meaning of, in each case, you've got these powers as executor. In each case, to settle claims in favor of or against my estate. I don't see it getting any clearer. As far as Justice Doherty, that's how IA works, all the way through the system where you have circuit court having all kinds of more issues on their table than they do. Because IA is set up with, come back in when you have a problem. And any interested person can do that. And any interested person here can do that. Those 26 saw that double accounting, and in that thousands of dollars figure that were deducted from the 3.4 million is Wells Fargo monthly fees, the two POA fees, and after the final report was sent out and the supplemental accounting was provided, 26 of the 27 did. One proof was in the pudding. One wanted to know what was there. I think they got bent out of shape because they didn't understand IA. You were supposed to get involved two years ago, and at the last minute you think there's automatic discovery at your whim. As far as overbill, that isn't what happened with clusters one, two, and three. The language was in the executive fee issue. Pay my executive, Mr. Gassick, fees for those services, executive according to his then going rate. The court had no problem in reading that language. This language is equally simple and plain, and sometimes the simplest is the better because it's so broad. Hey, in each case you have these powers. Subtle claims in favor of and against my estate. So it's not a matter of overbill. It's what were true tasks of an executor. Although I did not argue clusters one and two that Judge Brown went through, I did have reservations that were obvious, but that's a heck of a standard to challenge abuse of discretion. I have odds with nine hours he scrapped because I always went to the house when there was a realtor there or a buyer or any contractor or anybody in there because Mr. Reader was confronted in his backyard and to open up his wallet and took out his cash because there's a liquor store a block away and there's homeless people all around. I wouldn't put my wife in that house alone. I wouldn't put a realtor, male or female, in that house alone. So it wasn't excessive. It was a judgment call, and Judge Brown on those nine hours just didn't see it, didn't see that. And I even point out in my brief, my initial brief in this case, 20 months after trial, a 24-year-old boy is killed in the hall between the two houses next door. Shot, killed, and yet I shouldn't bill and shouldn't let realtors go in that house, possibly not lock it up like I do and the homeless people end up there the next time you want to show it. It has nothing to do with overbill. It has to do with discretion, which he exercised, I think wrongly in that example. What did the executor do and was it executor task? Or should I have farmed it out, though I farmed out many things? Cherry-picking, the last issue I have is forgive me, not the last issue. Judge Holdridge in this court asked those two questions for a reason. I think this court saw an opinion on the dichotomy between life services and estate services. He wouldn't have asked the question. Wouldn't have asked the question. What counsel just fairly but cleverly conflated was gee, 18-8 uses the word person. Well, we're not concerned with the word person. We're concerned with 28-8E's use of the word independent representative or his or her attorney. You don't conflate the two and go to the reference statute and say oh, it uses the word person. No, the more specific statute is 18-8E when it says if claims, if fees for the state attorney or his attorney should file a claim under 18-8. But to conflate the two is just not fair. As far as 18-8 Justice Doherty, we always make distinctions when statutes say may instead of shall. And that's the case if you look at 18-8. I have no anything further other than to respect my client's intent in his will. We've done it once. It is fair to do it again even if it is general in nature and using the words in each case. I think there's beauty in generalization because we don't open the door as the Phoenix case I cite at page 8 of my reply brief to everybody adding on language, saying what's missing and finding fault with it. Thank you, Your Honor. And thank you for resuming in-person oral arguments. I would like to be back as well. There are no comparisons. There are no comparisons. Thank you both for your arguments here today on this matter. It will be taken under advisement. A written decision will be issued to you as soon as possible.